**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| NEXSTAR MEDIA INC., <br><br> Plaintiff, <br><br> - against - <br><br> COMCAST CABLE COMMUNICATIONS, LLC, <br><br> Defendant. | Index No.: <br><br> **COMPLAINT** |

## INTRODUCTION

1. Nexstar Media Inc. ("Nexstar") is a local television company that provides community-driven, locally produced content to households in various markets across the nation. Nexstar contracts with cable television companies such as defendant Comcast Cable Communications, LLC ("Comcast"), who then include Nexstar's programming in the cable packages that they sell to subscribers. These "retransmission consent agreements" include carefully negotiated fees that the cable television companies pay in exchange for the programming they're receiving. Nexstar was forced to bring this action because Comcast has flouted the terms of the parties' retransmission consent agreement and refused to pay millions of dollars in fees owed to Nexstar.

2. On January 1, 2020, Nexstar and Comcast entered into a retransmission consent agreement that set forth the rates and other terms that would govern Comcast's carriage of television stations owned or, in certain circumstances, serviced by Nexstar (the "Comcast-Nexstar Agreement").

3. Retransmission consent agreements typically provide for retransmission of the programming of local television stations that are owned by the station operator (here, Nexstar). Nexstar's agreement with Comcast, however, provided that in certain specific circumstances,

retransmission of the programming of a station not owned by Nexstar would also be governed by the parties' agreement.

4. Specifically, in negotiating the Comcast-Nexstar Agreement, Comcast contemplated that Nexstar might contract with independently owned, third-party stations to provide local programming and other "local marketing" services. Accordingly, the parties carefully negotiated a provision in the Comcast-Nexstar Agreement, which provided that if Nexstar contracted to provide local marketing services to a third-party station during the term of the contract and had authority to negotiate retransmission consent on behalf of that station, then the third party station would become governed by the Comcast-Nexstar Agreement as an "Additional Station." Such provisions are known in the industry as "Additional Stations" provisions.

5. Furthermore, the parties specifically contemplated that WPIX (CW – New York) ("WPIX"), a New York City television station, might become an Additional Station pursuant to the Additional Stations provision. The parties therefore also negotiated the fees that would be paid for WPIX if the station were added to the Comcast-Nexstar Agreement.

6. About a year later on December 30, 2020, WPIX was sold to a new owner, Mission Broadcasting, Inc. ("Mission"), and Nexstar entered into a local marketing agreement ("LMA") with Mission to provide programming and other support services to WPIX. The transaction was approved by the Federal Communications Commission ("FCC") without any objections from Comcast or other cable companies. And as of that date, Comcast's retransmission of WPIX became governed by the terms of the Comcast-Nexstar Agreement, including the specific fees that the parties had negotiated.

7. Rather than live up to its end of the bargain, however, Comcast decided to repudiate the Comcast-Nexstar Agreement. In a series of letters spanning April through July 2021, Comcast stated that it would not comply with its obligations under the Comcast-Nexstar Agreement, and confirmed that it had not been (and would not be) paying the fees required under that agreement for WPIX. Yet all the while, Comcast continues to reap all the benefits of the

Agreement that *Comcast* demanded, including continuing to carry Nexstar's programming on its cable systems.

8. Comcast's refusal to honor its obligations is especially surprising here, given that the parties had specifically contemplated that WPIX could be added to the Comcast-Nexstar Agreement and included language in the Comcast-Nexstar Agreement to account for that possibility — language that Comcast only agreed to after receiving valuable concessions on other aspects of the agreement. Even more shocking, when Nexstar reached out to Comcast to request that it pay the contractual fees, Comcast refused to negotiate and instead blindsided Nexstar by filing a post-hoc petition with the FCC, demanding that the agency reverse its prior approval of the WPIX LMA in order to nullify Comcast's contractual promises.

## THE PARTIES

9. Nexstar is a Delaware corporation headquartered in Irving, Texas. Over the last 25 years, Nexstar has grown from a single television station to the one of the largest local television companies in the United States. Nexstar is committed to localism, and it delivers unique, locally produced programming and content to television households in various markets across the nation while offering local businesses the ability to connect with local consumers. Today, Nexstar produces over 270,000 hours of local programming weekly. Nexstar also offers certain programming services to independently owned television stations.

10. Comcast is a Delaware corporation headquartered in Philadelphia, Pennsylvania. Upon information and belief, Comcast (which operates under the "Xfinity" brand for residential consumers) is the largest cable TV company, the largest pay-TV company, and the largest internet service provider in the United States.

## JURISDICTION AND VENUE

11. Defendant Comcast is subject to personal jurisdiction in this Court pursuant to sections 301 and 302(a)(1) of the CPLR. Comcast transacts extensive business in New York State, including the sale of cable television and internet services throughout the State.

Furthermore, upon information and belief, Comcast maintains corporate offices in New York City and is one of the largest office tenants in Manhattan.

12. Venue is proper in New York County pursuant to CPLR 503, because, among other things: (a) a substantial part of the events and omissions giving rise to this lawsuit occurred in this county and a substantial part of the property at issue in the action is located here. The television station at issue is WPIX, which is based in New York City, and (b) Comcast maintains its corporate offices in Manhattan.

13. New York law governs this case because the Comcast-Nexstar Agreement specifically provides for its application.

## FACTUAL ALLEGATIONS

### *Nexstar's Agreement with Comcast*

14. Cable operators such as Comcast are in the business of selling television programming to subscribers, in exchange for monthly subscription fees. Many of these programs are the retransmitted signals of local broadcast channels, which the cable operators carry pursuant to "retransmission consent agreements" that are carefully negotiated with station owners and programmers, such as Nexstar.

15. On January 1, 2020, Nexstar and Comcast negotiated one such retransmission consent agreement — the Comcast-Nexstar Agreement — which set the fees that Comcast would pay for retransmitting the signals of approximately 171 different stations to Comcast's subscribers. The parties negotiated the contract to govern their relationship for the next three years — to December 15, 2022.

16. The Comcast-Nexstar Agreement contained an "Additional Stations" provision, which delineated the circumstances under which additional stations would become governed by the Comcast-Nexstar Agreement during contract's term:

> <u>Additional Stations</u>. In the event that during the Term hereof, [Nexstar] becomes the licensee, programmer, and/or bona fide manager of (or otherwise obtains an ownership interest in or enters into a contract to provide certain services, including but not limited to shared services, local marketing and/or joint sales agreement(s),

> with) a television station(s) other than a Station and [Nexstar] is not prohibited from negotiating for retransmission consent on behalf of such station under FCC's Rules (each, an "**Additional Station(s)**"), such Additional Station(s) shall be added to this Agreement as of the date of consummation of the relationship with such Additional Station(s) and shall be subject to the same terms and conditions as those applicable to the Stations, and any Operator Cable System(s) or MVPD system(s) that retransmits such Additional Station(s)'s Signals(s) shall be added to this Agreement as a System with respect to such Additional Station(s). Upon the date an Additional Station(s) is added under this Agreement, any other agreement with respect to such Additional Station(s) shall be deemed terminated with respect to such Additional Stations and the System(s) carrying such Additional Station(s)'s Signal(s), notwithstanding anything contained in any such other agreement.

Nexstar Agreement, § 6(c).

17. The Additional Stations provision provides that if Nexstar becomes the "programmer" of a station or otherwise enters into a "joint marketing and/or joint sales agreement" to provide services to a station, then that station is added to the Comcast-Nexstar Agreement and "any other agreement with respect to such Additional Station(s) shall be deemed terminated . . . ." *Id.* The parties carefully negotiated the Additional Stations provision and considered it a material term of the Agreement.

18. During these negotiations, the parties specifically contemplated that WPIX (the station at the heart of this dispute) might be added to the Comcast-Nexstar Agreement pursuant to the Additional Stations provision. Accordingly, the parties expressly negotiated the fees that would apply in such a circumstance and distinguished WPIX from any other station that might be added to the agreement:

> Furthermore, if WPIX is added to this Agreement as a Non-Big 4 Station during the Term, (1) from the date that WPIX is so added to this Agreement as a Non-Big 4 Station through June 31, 2021, WPIX shall be treated as a Qualified Non-Big 4 Station with respect to a Fee (even though it may not meet all of the criteria necessary to qualify as a Qualified Non-Big 4 Station) . . . .

> If an Additional Station (other than WPIX) is added to this Agreement as a Qualified Non-Big 4 Station during the Term, notwithstanding anything to the contrary herein, such Qualified

> Non-Big 4 Station shall receive, in lieu of the Fee set forth above, eighty-five percent (85%) of the applicable Fee.

Comcast-Nexstar Agreement, § 5(a)(ii).

19. At all times during the negotiation process, Nexstar reasonably believed that Comcast was negotiating in good faith and intended to actually follow through with its end of the contract.

### *WPIX Becomes an "Additional Station"*

20. On July 13, 2020, Mission, an independent third party that owns several broadcast stations, sought to purchase WPIX from its then-owner, the E.W. Scripps Company.

21. Pursuant to FCC rules, Mission's proposed acquisition of WPIX required FCC approval. As part of Mission's application to the FCC, Mission indicated that it would be entering into an LMA with Nexstar with respect to WPIX. LMAs are common in the television industry and refer to contracts whereby the non-station owner provides specified services (e.g. supplying programming, providing day-to-day management, or managing revenue collection) to the station owner, with the station owner retaining ultimate control and authority over the station.

22. Mission filed a copy of the yet-to-be executed LMA as part of its application to the FCC. The LMA disclosed, among other things, that Nexstar would be providing programming services for WPIX and also managing revenue collection for WPIX (e.g. collecting the fees owed by cable companies such as Comcast who retransmit WPIX to their subscribers).

23. As is its usual practice, the FCC issued a public notice announcing the filing of Mission's application and provided the public with 30 days to file a "petition to deny" or to otherwise object to the application. Mission's application, including the LMA, was available for review by any member of the public on the FCC's web site. On information and belief, Comcast was aware of Mission's application to acquire WPIX, as well as its intent to enter into the LMA with Nexstar. All in all, the application remained pending on the public docket for 141 days before the FCC approved the transaction on December 1, 2020, after having carefully considered the application and the LMA. Comcast did not object to the application or the proposed LMA at any point during the pendency of the application.

24. Accordingly, as of December 30, 2020, WPIX became an Additional Station under the plain language of the Comcast-Nexstar Agreement. As discussed in paragraphs 16 and 17, the Comcast-Nexstar Agreement's "Additional Stations" provision applies to any station for which Nexstar becomes a "programmer" or provides services pursuant to a "local marketing and/or joint sales agreement[]," provided that Nexstar is not prohibited by the FCC's rules from negotiating for retransmission consent on behalf of the station. Here, each of these conditions was satisfied: Nexstar was the "programmer" for WPIX, it had also entered into an LMA to provide services for WPIX, and it is allowed to negotiate retransmission consent on behalf of WPIX because Nexstar does not own any stations in the same market. *See* 47 C.F.R. § 76.65(b)(1)(viii) (prohibiting joint retransmission consent negotiation by two or more television broadcast stations only if the stations are in the same local market and not under common *de jure* control).

25. Thus, as of December 30, 2020, Comcast's distribution of WPIX, a Non-Big 4 Station, was subject to the fees that the parties had specifically negotiated for that station. *See* Comcast-Nexstar Agreement, § 5(a)(ii).

### *Comcast's Willful Breach and Untenable Contract Theory*

26. To date, Comcast continues to retransmit the WPIX programming to its subscribers and continues to collect monthly fees from its cable television subscribers. Comcast, however, has failed to make any of the payments for WPIX that are required under the Comcast-Nexstar Agreement.

27. Nexstar initially notified Comcast on December 24, 2020, that WPIX would become an "Additional Station" under the Comcast-Nexstar Agreement, and that Comcast would need to begin paying at the contracted rates by January 1, 2021. Comcast did not do so and, on April 8, 2021, Nexstar followed up with a second letter informing Comcast that it was in breach of the Comcast-Nexstar Agreement, and requesting that Comcast cure the breach. Comcast again refused to cure its breach.

28. In subsequent correspondence, Comcast took the position that it had also entered into a contract with Mission, which Comcast claimed supplanted whatever obligations it had under the Comcast-Nexstar Agreement. Comcast's argument, of course, is frivolous. Comcast made promises to Nexstar in its contract with Nexstar. Under basic tenets of contract law, Comcast cannot void those promises by promising something else to another party. Comcast's theory also fails because the Comcast-Nexstar Agreement expressly provides that any other agreement would be "deemed terminated" as to WPIX if it became an Additional Station. *See* Paragraphs 16 and 17.

29. Indeed, on information and belief, Mission itself informed Comcast in or around June 2021 that the Comcast-Mission Agreement did not apply to WPIX. Thus, even the other party with whom Comcast contracted has rejected Comcast's position.

30. Rather than engaging in any meaningful negotiations or discussions with Nexstar to resolve this dispute (much less attempt to defend its novel contract theory), Comcast instead filed a surprise petition with the FCC demanding that the agency overturn its prior approval of the WPIX LMA and rewrite well established retransmission consent rules. Comcast then disseminated the petition to the press in a cynical attempt to cast Nexstar in a negative light.

31. Of course, neither of the requests in Comcast's petition is proper. Comcast elected not to object to the WPIX LMA while the LMA was pending FCC approval, so cannot ask now that the agency overturn its prior decision.[1] And if Comcast wishes to change the FCC's rules, the proper procedure is to file a petition for rulemaking, not to ask the FCC to intervene in a private contract dispute.

32. Comcast not only knew that the addition of WPIX to the Comcast-Nexstar Agreement was a possibility, but it actually negotiated and agreed to terms for that precise circumstance in

---

[1] Relatedly, if Comcast believed that the "Additional Stations" and WPIX fee provisions it had negotiated were unfair or improper, Comcast should have filed a "good faith negotiation" complaint with the FCC during the negotiation process. Comcast did not do so.

return for receiving valuable concessions on other aspects of the contract. Comcast's willful breach is wholly unjustified, and it must be held responsible for its contractual obligations.

## FIRST CAUSE OF ACTION
(Breach of Contract)

33. Nexstar repeats and realleges each of the preceding paragraphs of this complaint as if fully set forth herein.

34. As set forth above (*supra* ¶ 2), Nexstar and Comcast are parties to the Comcast-Nexstar Agreement.

35. Nexstar has performed all of its contractual obligations under the Comcast-Nexstar Agreement and satisfied any and all preconditions to claim, suit, and recovery, excepting only those that have been waived by Comcast.

36. Under the Additional Stations provision of the Comcast-Nexstar Agreement, the parties agreed that, in the event (1) Nexstar "becomes the . . . programmer" of a station, or "enters into a contract to provide certain services, including but not limited to shared services, local marketing and/or joint sales agreement(s)" with respect to a station, and (2) Nexstar "is not prohibited from negotiating for retransmission consent on behalf of such station under FCC's Rules"; then such a station would be (1) added to the Comcast-Nexstar Agreement as an "Additional Station," (2) subject to the same terms and conditions as those applicable to the Stations" that are already part of the agreement; and (3) "any other agreement with respect to such Additional Station(s) shall be deemed terminated with respect to such Additional Stations." Comcast-Nexstar Agreement, § 6(c)

37. On December 30, 2020, Nexstar became the programmer of WPIX and also entered into a local marketing agreement to provide services to WPIX.

38. Nexstar is not prohibited from negotiating for retransmission consent on behalf of WPIX under the FCC's rules, because Nexstar does not own any stations in the WPIX market.

39. Accordingly, under the plain language of the Comcast-Nexstar Agreement, WPIX became an "Additional Station" on December 30, 2020, subject to the terms of the Comcast-

Nexstar Agreement, including the terms governing the retransmission fees that would be applicable to WPIX.

40. Comcast has breached its obligations under the Comcast-Nexstar Agreement by expressly repudiating, and refusing to comply with, the terms of the Comcast-Nexstar Agreement as to WPIX, including its obligations to pay the retransmission fees set forth in the Comcast-Nexstar Agreement.

41. To date, Comcast has improperly withheld payments owed to Nexstar totaling over three million dollars for the December 2020 through June 2021 period. Comcast's breach remains ongoing, however, and Nexstar continues to suffer damages, including in the form of improperly withheld payments. Nexstar is therefore entitled to judgment against Comcast for breach of contract, including an award of damages.

### PRAYER FOR RELIEF

WHEREFORE, Nexstar seeks judgment against Comcast as follows:

A. declaring that the Comcast-Nexstar Agreement's terms govern Comcast's retransmission of WPIX, finding Comcast liable for breach of contract, and awarding Nexstar its damages, plus applicable interest;

B. awarding Nexstar its losses, liabilities, costs, and expenses incurred in this action, including but not limited to any attorneys' fees, court costs, and expert fees; and

C. granting Nexstar such other and further relief as the Court deems just and proper.

| | |
|---|---|
| DATED: July 13, 2021 | COVINGTON & BURLING LLP<br><br>*/s/ Mitchell A. Kamin*<br>_____<br>Mitchell A. Kamin<br>Mark Chen<br><br>1999 Avenue of the Stars, Suite 3500<br>Los Angeles, CA 90067<br>Telephone: (424) 332-4800<br>Email: mkamin@cov.com<br>        mychen@cov.com<br><br>The New York Times Building<br>620 Eighth Avenue<br>New York, NY 10018-1405<br>Tel: (212) 841-1000<br><br>*Attorneys for Nexstar Media Inc.* |