UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXSTAR MEDIA INC.,<br><br>    Plaintiff and<br>    Counterclaim Defendant,<br><br>    - v. -<br><br>COMCAST CABLE COMMUNICATIONS, LLC,<br><br>    Defendant and<br>    Counterclaimant. | 1:21-cv-06860-JGK |

## PLAINTIFF AND COUNTERCLAIM DEFENDANT NEXSTAR MEDIA INC.'S RULE 72 OBJECTIONS TO THE OCTOBER 6, 2022 ORDER GRANTING DEFENDANT AND COUNTERCLAIM PLAINTIFF COMCAST CABLE COMMUNICATIONS, LLC'S MOTION TO COMPEL

Mitchell A. Kamin

COVINGTON & BURLING LLP
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
+1 (424) 332-4800

Lindsey C. Barnhart*

COVINGTON & BURLING, LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, CA 94306-2112
+1 (650) 632-4706

*Attorneys for Plaintiff and Counterclaim Defendant Nexstar Media Inc.*

*Admitted *pro hac vice*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .................................................................................................................. 3

LEGAL STANDARD........................................................................................................... 5

ARGUMENT........................................................................................................................ 6

I.      The Discovery Order is Clearly Erroneous and Contrary to Law. ................................... 6

      A.      Comcast's RFPs Are Not Relevant to Its Affirmative Defenses. ........................... 6

      B.      Comcast's RFPs Are Not Relevant to Its Tortious Interference
            Counterclaim........................................................................................................... 9

CONCLUSION................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
  175 F. Supp. 3d 44 (S.D.N.Y. 2016) ................................................................................9

*Collens v. City of New York*,
  222 F.R.D. 249 (S.D.N.Y. 2004) (Koeltl, J.) ............................................................4, 5, 7, 11

*Enzo Biochem, Inc. v. Molecular Probes, Inc.*,
  2013 WL 6987615 (S.D.N.Y. Dec. 6, 2013) ..................................................................9

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir. 2012) .............................................................................................5

*Gandler v. Nazarov*,
  1994 WL 702004 (S.D.N.Y. Dec. 14, 1994) ................................................................12

*Highland Cap. Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) ..........................................................................4, 5

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006) .............................................................................................8

*Magee v. Walt Disney Co.*,
  2020 WL 8815489 (S.D.N.Y. June 10, 2020) ..............................................................12

*Republic of Turkey v. Christie's, Inc.*,
  326 F.R.D. 394 (S.D.N.Y. 2018) .....................................................................................5

*Taylor v. Metro. Transp. Auth.*,
  2019 WL 2766502 (S.D.N.Y. July 2, 2019) ...................................................................8

*Wellington Shields & Co. v. Breakwater Inv. Mgmt. LLC*,
  2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016) .......................................................8, 9, 10

**Other Authorities**

47 CFR 76.65(b)(1)(viii) ........................................................................................................6

Fed. R. Civ. P. 72(a) .........................................................................................................1, 4

Fed. R. Civ. P. 26 ............................................................................................................5, 11

Restatement (Second) of Torts ..............................................................................................9

Pursuant to Federal Rule of Civil Procedure 72(a), Plaintiff and Counterclaim Defendant Nexstar Media Inc. objects to the Magistrate Judge's October 6, 2022 order granting Defendant and Counterclaim Plaintiff Comcast Cable Communications, LLC's motion to compel ("Discovery Order") and states as follows:

## PRELIMINARY STATEMENT

This "straightforward" contract dispute concerns whether Comcast's failure to pay Nexstar retransmission fees for the television station WPIX violates the parties' agreement. Order Denying Comcast's Motion to Dismiss or Stay, May 2, 2022 Hr'g Tr., at 18:20 ("District Court Order"). On May 2, 2022, the Court held that this dispute turns on the "discrete factual issue" of whether Nexstar owns a television station in WPIX's market. *Id.* at 20:12-16. The Court further held that broader issues of whether Nexstar "owns" WPIX under various FCC rules and whether Nexstar's relationship to WPIX violates the FCC national ownership cap "have no bearing" on this dispute. *Id.* 19:17-19; *see also id.* 18:23-19:3 ("The answer to that question [of whether Comcast breached the contract] does not turn on the ownership rules[.]"); 19:11-15 ("The question whether Nexstar owns WPIX in violation of the ownership cap has no bearing on whether Nexstar is 'prohibited from negotiat[ing] . . . retransmission consent on behalf of' WPIX under the FCC's rules."); 21:2-6 (FCC ownership issue "bears no relation to the contract dispute in this case, and the Court will therefore have no reason to resolve it").

Comcast has disregarded the Court's ruling by seeking extensive discovery regarding issues relating to FCC "ownership" rules—specifically, broad discovery regarding Nexstar's general relationship with WPIX and WPIX's owner, Mission Broadcasting, Inc. ("Mission") in order to establish whether Nexstar effectively "owns" WPIX. The Court has already determined

that these issues are irrelevant to this lawsuit, and the Magistrate Judge incorrectly permitted discovery into these very topics in his Discovery Order.

The Magistrate Judge's Discovery Order was clearly erroneous or contrary to law, and so should be set aside. *First*, the Discovery Order's finding that the disputed discovery is relevant to Comcast's affirmative defenses is inconsistent with the Court's clear and repeated holding in the May 2022 District Court Order. The Magistrate Judge found that the disputed discovery is relevant to Comcast's contract defense that Nexstar improperly "owns" WPIX under FCC rules. *See* Declaration of Kevin Hoogstraten ("Hoogstraten Decl.") Ex. 1, Oct. 6, 2022 Hr'g Tr., at 5-6, 8-10; ECF 154 at 1. The Court, however, has already held that the question of FCC ownership has no bearing on the contract dispute here.

*Second*, the Discovery Order's finding that the disputed discovery is relevant to Comcast's counterclaim, ECF 154 at 1, relies on the mistaken premise that Nexstar's purported intent to control WPIX or Mission is relevant to a tortious interference with contract claim, *see* Hoogstraten Decl., Ex. 1, Oct. 6, 2022 Hr'g Tr., at 12-15. In fact, the intent element of a tortious interference claim requires specific intent to induce a breach, and is not satisfied by a general intent to control a third party. Comcast's requested discovery into Nexstar's purported control over WPIX or Mission is therefore not probative of this, or any other, element of its counterclaim. Moreover, Comcast's counterclaim is the subject of a pending motion to dismiss, which was fully briefed as of August 12, 2022. *See* ECF No. 92. Nexstar should not be compelled to produce burdensome discovery purportedly relevant to that counterclaim unless the Court determines that the counterclaim is viable.

## BACKGROUND[1]

Nexstar is a television company that enters into agreements with distributors to carry television programming in exchange for fees. This dispute involves a retransmission consent agreement between Nexstar and Comcast that governs Comcast's carriage of certain television stations ("Comcast-Nexstar Agreement"). The Comcast-Nexstar Agreement sets forth the fees that Comcast must pay for retransmitting the broadcast signal of those stations. The agreement further states that if, during its term, (1) Nexstar "becomes the licensee, programmer, and/or bona fide manager of (or otherwise obtains an ownership interest in or enters into a contract to provide certain services, including but not limited to shared services, local marketing and/or joint sales agreement(s), with)" a third-party station; and (2) Nexstar "is not prohibited from negotiating retransmission consent on behalf of such station under FCC's Rules," then the third-party station becomes governed by the Agreement. *See* ECF No. 93-2, Comcast-Nexstar Agreement, at § 6(c). Nexstar's lawsuit consists of one breach of contract cause of action for nonpayment of fees due under the agreement for retransmission of third-party station WPIX.

Comcast initially responded to Nexstar's lawsuit by moving to dismiss or stay the case under the primary jurisdiction doctrine. *See* ECF No. 19. Comcast's motion argued that interpretation of the Comcast-Nexstar Agreement's "Additional Stations" provision required a

---

[1] The general factual background of the case has been set forth extensively elsewhere, including in ECF Nos. 26, 92, and 149, and Nexstar sets forth herein only the facts relevant to the instant dispute.

determination of whether FCC *ownership* rules "prohibited [Nexstar] from negotiating retransmission consent on behalf of" WPIX. *See id.* at 8-9. On May 2, 2022, the Court denied Comcast's motion, holding that the only "FCC Rules" pertinent to the Additional Stations provision are the FCC's *negotiation* rules, and that the FCC ownership rules "have no bearing" on that inquiry. *See supra* at 1.

Comcast has propounded 28 requests for production ("RFPs") in this action to date, and Nexstar has produced documents in response to many of those RFPs. Comcast moved to compel the production of additional documents in response to 11 RFPs:

- **RFP No. 2** seeks documents "sufficient to show Nexstar's involvement with WPIX[.]" Nexstar has already agreed to produce documents sufficient to show that Nexstar "enter[ed] into a . . . local marketing and/or joint sales agreement" with respect to WPIX and is "not prohibited from negotiating for retransmission consent on behalf of [WPIX] under FCC's Rules"—*i.e.*, the only "involvement" that is relevant to the contract claim here.
- **RFP No. 4** seeks "[a]ll documents and communications concerning Comcast's carriage of WPIX." Nexstar has already agreed to produce a copy of the Comcast-Nexstar Agreement, which governs "Comcast's carriage of WPIX."
- **RFP Nos. 3, 7, and 15-21** seek a range of documents concerning Nexstar's general relationships with Mission and WPIX, including documents concerning "Mission's involvement with WPIX" (RFP No. 3); the FCC's national ownership cap (RFP No. 17), and Nexstar's "involvement in Mission's decision-making, policies, personnel, finances, and revenues" (RFP No. 18).

With respect to RFP Nos. 2 and 4, Comcast argued that the RFPs are relevant to Comcast's affirmative defense that "FCC ownership restrictions preclude Nexstar from adding

WPIX to the Comcast-Nexstar Agreement" because they relate to Nexstar's alleged control over WPIX and "long-running scheme" to circumvent FCC regulations, and to Comcast's counterclaim for tortious interference because they relate to Nexstar's purported general intent to "control" third-party Mission Broadcasting, Inc. *See* ECF No. 138 at 2-3. With respect to the remaining RFPs, Comcast argued that the RFPs "seek information relevant to Nexstar's relationship with, and financial and operational control of, Mission [and/or] WPIX," which it claimed relates to "critical" issues such as the aforementioned "long-running scheme" and Nexstar's ability and motivation to procure a breach. *See id.* at 3.

On October 6, the Magistrate Judge granted Comcast's motion to compel, finding that the disputed discovery requests seek documents relevant to Comcast's defenses and counterclaim. *See* ECF No. 154.

## **LEGAL STANDARD**

The district court "must consider timely objections [to nondispositive pretrial matters] and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "An order is 'clearly erroneous' when 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Collens v. City of New York*, 222 F.R.D. 249, 251 (S.D.N.Y. 2004) (Koeltl, J.). A judge is "justified" in finding clear error where he experiences such conviction even if "there is evidence to support" the magistrate judge's ruling. *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 177 (S.D.N.Y. 2008). An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Collens*, 222 F.R.D. at 251.

# ARGUMENT

## I. The Discovery Order is Clearly Erroneous and Contrary to Law.

While a court has "broad latitude to determine the scope of discovery," *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 399 (S.D.N.Y. 2018) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)), that leeway is necessarily bounded by Federal Rule of Civil Procedure 26, including its prohibitions on overbroad and burdensome discovery. The Discovery Order is clearly erroneous and contrary to law because it subjects Nexstar to overbroad discovery that is of no relevance to any legal questions currently before the Court. *See, e.g.*, *Collens*, 222 F.R.D. at 251.

### A. Comcast's RFPs Are Not Relevant to Its Affirmative Defenses.

The Discovery Order erroneously found that the disputed discovery is relevant to Comcast's affirmative "FCC ownership" defense. *See* ECF 154 at 1; Hoogstraten Decl., Ex. 1, Oct. 6, 2022 Hr'g Tr., at 5-6, 8-10. In Comcast's words, "one of Comcast's primary contract defenses" is "that FCC ownership restrictions preclude Nexstar from adding WPIX to the Comcast-Nexstar Agreement." ECF No. 138 at 3.

The District Court, however, has already considered and rejected Comcast's contention that FCC ownership rules bear on this contract dispute. *See* District Court Order at 17:22-25 ("[A]ccording to Comcast, Nexstar's claim hinges on the FCC's resolution of the question whether Nexstar 'owns' WPIX and thereby violates the ownership cap."). The Court definitively held that "the question whether Nexstar 'owns' WPIX, in violation of the ownership cap, has no bearing on whether Comcast has violated the retransmission agreement in connection with WPIX." *Id.* at 18:13-16. Comcast's "ownership" defense is therefore irrelevant, as "the Court need not in this

case make a finding as to whether Nexstar 'owns' WPIX in violation of the ownership cap." *Id.* at 18:16-18.

To dispel any doubt, the Court repeatedly confirmed in its order denying Comcast's motion to dismiss or stay pursuant to the primary jurisdiction motion that Nexstar's claim (and thus Comcast's defenses) implicates only the FCC *negotiation* rules, and those rules have nothing to do with station "ownership":

- "The answer to that question [of whether Comcast breached the contract] does not turn on the ownership rules, but rather the negotiations rules, which prohibit the coordination of negotiations between two stations if the stations exist in the same market unless such stations are under common control. *See* 47 CFR 76.65(b)(1)(viii)." District Court Order at 18:23-19:3.

- "[I]t does not follow from a finding that Nexstar violates the ownership cap, if any such finding is ever made, that Nexstar is thereby 'prohibited from negotiating for retransmission consent on behalf of WPIX under FCC's rules.'" *Id.* 18:1-4.

- "[T]he question whether Nexstar 'owns' WPIX, in violation of the ownership cap, has no bearing on whether Comcast has violated the retransmission agreement in connection with WPIX, and the Court need not in this case make a finding as to whether Nexstar 'owns' WPIX in violation of the ownership cap." *Id.* 18:13-18.

- "The question whether Nexstar owns WPIX in violation of the ownership cap has no bearing on whether Nexstar is 'prohibited from negotiating retransmission consent on behalf of' WPIX under the FCC's rules." *Id.* 19:11-15.

- "[T]he FCC's rules governing ownership of commercial broadcast stations . . . have no bearing on the contract dispute in this case." *Id.* 19:17-19.
- "[The ownership issue] bears no relation to the contract dispute in this case, and the Court will therefore have no reason to resolve it." *Id.* 21:4-6.

The Court's May 2022 order simply cannot be squared with the Discovery Order's finding that Comcast may seek discovery on ownership issues.

The Discovery Order erroneously disregarded the District Court Order on the basis that the question of whether FCC ownership issues are relevant to this contract dispute has not been "fully briefed" or determined by the Court. *See* Hoogstraten Decl., Ex. 1, Oct. 6, 2022 Hr'g Tr., at 23. That is incorrect: the parties fully briefed the question of whether or not FCC ownership issues bear on this contract dispute, and after full briefing and argument, the Court decided that those issues are irrelevant to Nexstar's contract claim. *See, e.g.*, District Court Order at 18:1-5 (noting that Comcast failed to cite any case, statute, or regulation to support its contention that an ownership cap violation would prohibit Nexstar from negotiating retransmission consent on behalf of WPIX). And in any event, the District Court's colloquy with Comcast's counsel during oral argument—on which the Magistrate Judge relied in finding that issues of FCC ownership might still be relevant to the case—was not part of the District Court Order that was read into the record after oral argument concluded. *See id.* at 6:1-2, 12, 17-20 (statements relied on by Magistrate Judge made ten transcript pages prior to the Court stating it was "prepared to decide" and reading formal order). The Court's holdings outweigh any colloquy with counsel, and a stray statement during oral argument is not a sound basis for contravening a clear order.

Nexstar should therefore not be compelled to produce documents in response to the

disputed RFPs, which seek irrelevant discovery relating to FCC ownership rules and restrictions. For example, RFP No. 17 seeks "[a]ll documents and communications concerning the National Ownership Cap as it relates to WPIX," despite the Court's holding that the issue of "whether Nexstar's relationship to WPIX constitutes ownership and therefore violates the ownership cap . . . bears no relation to the contract dispute in this case." District Court Order at 21:2-5. Comcast's other disputed requests target documents concerning Nexstar's overall relationship with WPIX and Mission, on the basis that those relationships must be analyzed to determine whether they comply with FCC ownership rules. *See, e.g.*, RFP Nos. 2 (documents sufficient to show, among other things, "Nexstar's involvement in WPIX's programming, policies, personnel, finances, and revenues"); 3 (documents concerning Nexstar's prior representations to the FCC); 18 (documents sufficient to show "Nexstar's relationship to Mission as its variable interest entity"). As discussed above, these ownership issues play no part in the analysis of Nexstar's claim. Accordingly, the disputed discovery is irrelevant, and compelling its production would be inconsistent with the District Court Order. The Court should sustain Nexstar's objection on that ground.

### B. Comcast's RFPs Are Not Relevant to Its Tortious Interference Counterclaim

The disputed discovery requests also have no bearing on Comcast's counterclaim for tortious interference with contract. Comcast argues that discovery related to Nexstar's purported "intent and ability to control WPIX" or Mission is relevant to "its Counterclaim," writ large. ECF No. 138 at 3. However, the discovery sought by the RFPs has no bearing on any of the elements of tortious interference and is therefore inappropriate. *See, e.g.*, *Taylor v. Metro. Transp. Auth.*, 2019 WL 2766502, at *3 (S.D.N.Y. July 2, 2019) ("Without a showing of relevancy, the Court

will not compel production of documents.").

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (internal quotation marks and citation omitted). With respect to the third element, Comcast must prove that Nexstar "specifically intended to interfere with the relevant contract." *Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 2016 WL 5414979, at *5 (S.D.N.Y. Mar. 18, 2016)).

The disputed discovery seeks a broad swath of information relating to Nexstar's purported general "'intent and ability' to control WPIX through Mission" and alleged "financial motivation and practical opportunity [to secure] Mission's [purported] breaches." ECF No. 153 at 3. For instance, Comcast's RFP No. 3 demands documents related to "Mission's involvement with WPIX," while RFP No. 18 seeks documents touching on Nexstar's "involvement in Mission's decision-making, policies, personnel, finances, and revenues." Such demands do not seek discovery relevant to the question of whether Nexstar specifically intended to induce Mission's alleged breach, which is the only intent that is relevant to the tortious interference counterclaim. *See, e.g.*, Restatement (Second) of Torts § 766 cmt. j (noting that tortious interference requires that the defendant either "acts for the primary purpose of interfering with the performance of the contract," or that it "desires to interfere, even though [it] acts for *some other purpose in addition*" (emphasis added)); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 65 (S.D.N.Y. 2016) (tortious interference with contract requires "specific intent to injure a known

contractual relationship with another"); *Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 WL 6987615, at *4 (S.D.N.Y. Dec. 6, 2013) ("Put simply, a defendant must have *specific intent* to interfere with the relevant contract" for a claim of tortious interference to lie.) (emphasis added).

At oral argument, the Magistrate Judge suggested that a finder of fact could "infer" the requisite specific intent from Nexstar's alleged general control over WPIX and Mission that Comcast's requests inquire into. *See* Hoogstraten Decl., Ex. 1, Oct. 6, 2022 Hr'g Tr., at 12-15. Any such inference, however, would be contrary to clear authority that a defendant's alleged schemes to control another entity are, broadly speaking, irrelevant to claims of tortious interference. In *Wellington Shields v. Breakwater Investment Management*, for example, the court held that the defendants' attempt to "gain further control" over the breaching third party was irrelevant to the issue of intentional procurement for purposes of a tortious interference claim. 2016 WL 5414979, at *5. "[W]hile it may be true that [the Defendants'] subsequent loans allowed [them] to gain additional control over [the third party], that fact is *irrelevant* to the issue of whether Defendants *intentionally sought to procure a breach* of Plaintiff's contract with [the third party]." *Id.* (emphases added). Thus, whether Nexstar exercised general "control" over Mission or WPIX has no bearing on whether Nexstar had the specific, malicious intent to interfere with the purported contractual relationship between Mission and Comcast, and the Discovery Order erroneously adopted this rationale in granting the motion to compel.[2] And Nexstar has already agreed to

---

[2] Comcast also attempted to justify the disputed discovery by suggesting that the documents sought *might* be relevant "*if* Nexstar were to pursue an 'economic interest defense.'" ECF No.

—11—

produce non-privileged documents, if any, that *do* bear on specific intent because they relate to the communications that form the basis of Comcast's tortious interference claim.

Finally, to the extent the Court overrules Nexstar's objections on the ground that the disputed discovery is relevant to the tortious interference counterclaim, Nexstar intends to seek a motion staying such discovery until Nexstar's pending motion to dismiss the counterclaim is decided. Nexstar's motion "is potentially dispositive" and legally sound. *Gandler v. Nazarov*, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (staying discovery when pending motion to dismiss "appear[ed] to be not unfounded in the law"). Since "responding to discovery in this action is likely to be burdensome" to Nexstar, and Comcast would not be unfairly prejudiced by a "brief" delay in the production of the disputed documents while the Court considers Nexstar's motion to dismiss, Nexstar should not be required to commence the burdensome process of locating and reviewing potentially responsive documents. *Magee v. Walt Disney Co.*, 2020 WL 8815489, at *1 (S.D.N.Y. June 10, 2020).

## **CONCLUSION**

For the foregoing reasons, Nexstar respectfully requests that the Court sustain Nexstar's

---

153 at 3 (emphasis added). Such bald conjecture cannot support the burdensome discovery requests at issue here. "While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Collens*, 222 F.R.D. at 253 (citations omitted).

objections to the Discovery Order on the grounds that the discovery sought by Comcast is not relevant to (1) Nexstar's breach of contract claim or Comcast's defenses thereto; and (2) Comcast's tortious interference counterclaim. Nexstar respectfully requests that the Court rule as to each of the two grounds for Nexstar's objections.

DATED: Los Angeles, California
October 20, 2022

Respectfully submitted,

COVINGTON & BURLING LLP

By:    /s/ Michell A. Kamin
      Mitchell A. Kamin
      COVINGTON & BURLING LLP
      1999 Avenue of the Stars, Suite 3500
      Los Angeles, CA 90067-4643
      +1 (424) 332-4800

      Lindsey C. Barnhart*
      COVINGTON & BURLING LLP
      3000 El Camino Real
      5 Palo Alto Square, 10th Floor
      Palo Alto CA 94306-2112
      +1 (650) 632-4706

      *Attorneys for Plaintiff and Counterclaim Defendant Nexstar Media, Inc.*

      *Admitted *pro hac vice*

# CERTIFICATE OF COMPLIANCE

      The undersigned hereby certifies that this memorandum of law complies with Section II.D. of the Court's Individual Practices dated July 6, 2022.  This memorandum of law contains 3,386 words exclusive of the cover page, certification of compliance, table of contents, and table of authorities, and is consistent with the formatting requirements set forth in Section II.D.

DATED:  Los Angeles, California  
             October 20, 2022

Respectfully submitted,

COVINGTON & BURLING LLP

By:    /s/ Mitchell A. Kamin  
       Mitch A. Kamin  
       Lindsey C. Barnhart*

*Attorneys for Plaintiff and Counterclaim Defendant Nexstar Media Inc.*

*Admitted *pro hac vice*