UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXSTAR MEDIA INC.,<br><br>    Plaintiff and<br>    Counterclaim<br>    Defendant,<br><br>  v.<br><br>COMCAST CABLE COMMUNICATIONS,<br>LLC,<br><br>    Defendant and<br>    Counterclaim Plaintiff. | Case No.: 1:21-cv-06860-JGK-SDA |
| COMCAST CABLE COMMUNICATIONS,<br>LLC,<br><br>    Third-Party Plaintiff,<br><br>  v.<br><br>MISSION BROADCASTING, INC.<br><br>    Third-Party Defendant. | |

**COMCAST CABLE COMMUNICATIONS, LLC'S MEMORANDUM OF LAW
IN OPPOSITION TO NEXSTAR MEDIA INC.'S RULE 72 OBJECTIONS TO THE
OCTOBER 6, 2022 ORDER GRANTING MOTION TO COMPEL**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

*Attorneys for Defendant, Counterclaim Plaintiff,
and Third-Party Plaintiff Comcast Cable
Communications, LLC*

## TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ............................................................................................................................ 8

I.     MAGISTRATE JUDGE AARON'S RULING THAT THE REQUESTS ARE RELEVANT TO AT LEAST ONE OF COMCAST'S CONTRACT DEFENSES IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW ................................... 9

II.     MAGISTRATE JUDGE AARON'S RULING THAT THE REQUESTS ARE RELEVANT TO COMCAST'S COUNTERCLAIM IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW .................................................................... 11

III.     NEXSTAR'S THREATENED STAY MOTION PROVIDES NO BASIS TO DISTURB THE OCTOBER 6 ORDER ......................................................................... 14

CONCLUSION ........................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

<span style="float:right">P<small>AGE</small>(S)</span>

C<small>ASES</small>

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*,
  259 F. Supp. 3d 16 (S.D.N.Y. 2017),
    *aff'd* 712 F. App'x 85 (2d Cir. 2018) ................................................................. 13

*BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*,
  No. 19-cv-4273, 2022 WL 4181823 (S.D.N.Y. Sept. 13, 2022) ............................. 8

*Edmonds v. Seavey*,
  No. 08-cv-5646, 2009 WL 2150971 (S.D.N.Y. Jul. 20, 2009) ............................... 9

*Galloway v. County of Nassau*,
  No. 19-cv-5026, 2022 WL 681065 (E.D.N.Y. Mar. 7, 2022) ................................. 9

*Int'l Minerals & Resources, S.A. v. Pappas*,
  96 F.3d 586 (2d Cir. 1996) ................................................................................ 11

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
  336 F.R.D. 400 (S.D.N.Y. 2020) ......................................................................... 8

*Khatabi v. Bonura*,
  No. 10-cv-1168, 2017 WL 10621191 (S.D.N.Y. Apr. 21, 2017) ............................ 8

*Republic of Turkey v. Christie's Inc.*,
  316 F. Supp. 3d 675 (S.D.N.Y. 2018) ................................................................ 14

*Rubin v. Valicenti Advisory Servs., Inc.*,
  471 F. Supp. 2d 329 (S.D.N.Y. 2007) ............................................................. 8-9

*S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery Inc.*,
  751 F. App'x 39 (2d Cir. 2018) ......................................................................... 12

*Taboola, Inc. v. Ezoic Inc.*,
  No. 17-cv-9909 2019, WL 465003 (S.D.N.Y. Feb. 6, 2019) ................................ 13

*Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*,
  924 F. Supp. 2d 508 (S.D.N.Y. 2013) ................................................................ 8

*Wellington Shields & Co. LLC v. Breakwater Mgmt. LLC*,
  No. 14-cv-7529 2016, WL 5414979 (S.D.N.Y. Mar. 18, 2016) ...................... 12-13

*Williams v. Rosenblatt Secs., Inc.*,
  263 F. Supp. 3d 802 (S.D.N.Y. 2017) ................................................................. 8

STATUTES & RULES

Fed. R. Civ. P. 26 ...................................................................................................... 10

Fed. R. Civ. P. 72 ........................................................................................................ 8

Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Comcast Cable Communications, LLC ("Comcast") submits this memorandum of law in opposition to the objections (Dkt No. 158) ("Objections") of Plaintiff and Counterclaim Defendant Nexstar Media Inc. ("Nexstar") to Magistrate Judge Aaron's October 6, 2022 order granting Comcast's motion to compel discovery (Dkt. Nos. 154, 155) ("October 6 Order").

<u>PRELIMINARY STATEMENT</u>

Having chosen to initiate this action, Nexstar now seeks to avoid its discovery obligations. After months of stonewalling Comcast on requests for production concerning Nexstar's ownership and/or control of Third-Party Defendant Mission Broadcasting, Inc. ("Mission") and the Mission-owned television station WPIX—issues at the core of one of Comcast's principal contract defenses *and* Comcast's affirmative claims—Nexstar has been ordered to produce these highly relevant materials. Rather than comply, Nexstar attempts to further delay. Before Nexstar was ordered to produce documents in response to Comcast's requests, it pressed for an expedited discovery schedule, claiming that all discovery in the case could be completed in 90 days. Since it was ordered to produce documents, however, Nexstar has sought to extend the discovery schedule by facially unreasonable and unnecessary durations. And now, through its Objections, Nexstar seeks to avoid the consequences of the October 6 Order altogether. Nexstar has failed to identify any error or defect in the Magistrate Judge's thorough and well-reasoned ruling, and the October 6 Order should be affirmed in its entirety.

*First*, Nexstar is incorrect that this Court's prior denial of Comcast's pleading-stage primary jurisdiction motion constituted a rejection *on the merits* of one of Comcast's defenses to Nexstar's breach-of-contract claim, or otherwise precluded discovery into control of Mission/WPIX. Nexstar does not claim that Comcast's disputed document requests seek documents that are irrelevant to Comcast's "*de facto* control" defense; rather, Nexstar contends

that Comcast's entire defense is irrelevant because of this Court's prior ruling.  But Nexstar's position ignores the express language of the Court's ruling—which Magistrate Judge Aaron carefully considered—that the contractual provision at issue would "plainly" continue to be "the subject of dispute" in the case until eventual resolution on "full[] brief[ing]."  The Court also disclaimed any views on the appropriate "scope of discovery" for the case going forward, especially with Comcast's affirmative claims still forthcoming at that time.

*Second*, Nexstar is incorrect that discovery concerning Nexstar's control over Mission and/or WPIX is improper because such issues are irrelevant to Comcast's counterclaim for tortious interference with contract.  New York law requires the proponent of such a claim to show *intentional* and *unjustified* interference with the relevant agreement, both of which implicate the defendant's motives and objectives.  Here, documents showing that Nexstar exercises or seeks control over Mission and/or WPIX bear directly on whether and why Nexstar sought to procure Mission's contractual breaches and how it was able to do so successfully.  Magistrate Judge Aaron thus properly determined that this is just the sort of evidence from which a factfinder could "infer[]" the "mens rea" necessary to support a tortious interference claim.

*Finally*, Nexstar's contemplated stay application—threatened for the first time *months* after Nexstar filed its motion to dismiss that supposedly justifies it—provides no basis to disturb the October 6 Order.  The law is clear in this District that the mere pendency of a motion to dismiss does not warrant a discovery stay.  And, although Magistrate Judge Aaron informed Nexstar that the Court would consider any application that Nexstar made, he also advised that he "was not inclined to grant" a stay based on his view, after reviewing the relevant pleadings, that Comcast's counterclaim and third-party claims present a "genuine issue that is going to have to be resolved."  Comcast, accordingly, is entitled to the discovery that was ordered and the October 6 Order should be affirmed.

## BACKGROUND

Comcast is a leading telecommunications company that, as relevant here, distributes television services to subscribers pursuant to retransmission consent agreements with station groups. Comcast entered into such an agreement with Nexstar (the "Comcast-Nexstar Agreement"), as well as with Mission (the "Comcast-Mission Agreement"), a smaller station group with which Nexstar has a long-standing "sidecar" relationship—i.e., an arrangement by which Nexstar exerts significant financial and operational control over Mission and realizes economic benefits from stations that Mission owns.

### *Nexstar's Breach of Contract Claim and Comcast's Primary Jurisdiction Motion*

Nexstar initiated this action in July 2021, claiming that Comcast breached the Comcast-Nexstar Agreement by failing to pay retransmission consent fees to Nexstar for Comcast's carriage of the Mission-owned, New York City-based television station, WPIX. Comcast has asserted a number of defenses, including that the terms of the Comcast-*Mission* Agreement govern Comcast's carriage of the station and that Nexstar exercises *de facto* control over WPIX, which prohibits Nexstar from negotiating retransmission consent for the station under "FCC[] Rules," as defined in the Comcast-Nexstar Agreement.

On September 22, 2021, Comcast moved, pursuant to the primary jurisdiction doctrine, to stay or dismiss Nexstar's action without prejudice pending resolution of Comcast's related, first-filed petition to the Federal Communications Commission ("FCC"). Specifically, it asked the Court to defer in the first instance to the FCC's determination as to whether Nexstar's relationship with WPIX violated the agency's national station ownership cap and/or certain station divestiture conditions that the FCC imposed in connection with approving Nexstar's 2019 acquisition of Tribune Media Company assets. (*See generally* Dkt. Nos. 18-23, 25-29, 32-34.) This Court heard argument on May 2, 2022 and thereafter issued an oral ruling denying

Comcast's motion.  (Dkt. Nos. 46, 49 (the "May 2 Order").)  In its May 2 Order, the Court

determined that Nexstar's claim presented "mainly standard contract issues" within the Court's

competence to adjudicate and thought it unlikely that any eventual FCC decision would conflict

with the ultimate judicial resolution.  (*See, e.g.*, May 2 Order at 19:23-20:5, 21:1-16.)  In keeping

with the pleading-stage posture of the case, however, the Court expressly declined to reach the

merits of Nexstar's breach claim or any of Comcast's defenses, recognizing, as discussed further

below, that "the meaning" of the key "contractual provision" (including the meaning of "FCC's

Rules") "w[ould] plainly be the subject of dispute between the parties" going forward and

making clear that the Court would not decide the issue "until it's fully briefed."  (*Id.* at 6:1-11.)

The Court also noted in issuing a corresponding scheduling order that it was "certainly not on top

of what the scope of the discovery would be in the case," particularly given that Comcast had not

yet filed its affirmative claims at the time.  (*Id.* at 24:3-26:4.)

### *Comcast's Affirmative Claims and Discovery Commences*

On May 20, 2022, Comcast filed claims for breach of contract and indemnification

against Mission (Dkt. Nos. 52-53 ("TPC")) and for tortious interference with contract against

Nexstar for improperly procuring Mission's breaches (Dkt. Nos. 54-55 ("Counterclaim")).  As

relevant here, Comcast's TPC alleges that Mission breached the Comcast-Mission Agreement by

failing to add and maintain WPIX ███████████████ following its acquisition in

December 2020 and by admittedly "delegating" to Nexstar, without Comcast's written consent,

authority to negotiate retransmission consent for the station.  (*See, e.g.*, TPC ¶¶ 8-9, 15-16, 37-

38, 50-51.)  The Counterclaim alleges, among other things, that Nexstar intentionally procured

these breaches as part of a broader scheme to cement Nexstar's control over WPIX in

circumvention of the above-referenced FCC ownership restrictions.  (*See, e.g.*, Counterclaim

¶¶ 1-11, 33-47, 52-58.)  In particular, Comcast has alleged that, after the FCC required Nexstar

to divest WPIX in 2019, Nexstar nevertheless retained an option to repurchase the station, which it eventually assigned to is sidecar, Mission, in an effort to regain effective control.  (*Id.* ¶¶ 6, 27-30.)  Mission subsequently exercised the option, acquired WPIX, and promptly executed a Local Programming and Marketing Agreement ("LPMA") with Nexstar that, among other things, would entitle Nexstar to 100% of WPIX's revenues.  (*Id.* ¶¶ 6, 31-33.)  As the station's new owner and licensee, Mission was obligated to add WPIX ██████████████ to the Comcast-Mission Agreement—an obligation it acknowledged in ████████████████████ ██████████████████████████████████.  (*Id.* ¶¶ 7, 29, 34-36.)

But Nexstar belatedly realized that the Comcast-Mission Agreement allows Comcast to carry WPIX ██████████████████████████████████████████████ ████████████████.  (*Id.* ¶¶ 8-9, 39.)  Consequently, Nexstar prevailed upon Mission to breach the Comcast-Mission Agreement, retract and disavow its ████████████████, and adopt Nexstar's unfounded position that the Comcast-*Nexstar* Agreement—which ████████████ ████████████████████████████—controlled.  (*Id.* ¶¶ 8-9, 28, 31-46.)

Discovery commenced in early June 2022, shortly after Comcast filed its Counterclaim and TPC, and has been ongoing since that time.  Nexstar and Mission moved to dismiss the Counterclaim and TPC, respectively, on July 8, 2022, which motions were fully briefed as of August 12, 2022, and remain pending.  (Dkt. Nos. 91-95, 97-101, 114-17, 125-26, 128-29.) Neither Nexstar nor Mission sought a stay of discovery at (or since) that time.

***Discovery Status and Comcast's Letter Motion to Compel***

Comcast has complied with nearly every one of Nexstar's requests for production.  It has substantially completed its production of documents in response to those requests, with the exception of a few modifications that Nexstar recently requested and to which Comcast has largely agreed.  By contrast, Nexstar refused outright to search for and produce documents in response to nearly *half* of Comcast's document requests and effectively refused as to many others, by, for example, "agreeing" to provide only copies of documents that Nexstar knew Comcast already possessed or were publicly available.  (*See generally* Dkt. No. 153-1 (Nexstar's Responses and Objections to Comcast's Requests for Production).)  The parties met and conferred on multiple occasions and exchanged numerous letters and email correspondence, including specific, written proposals by Comcast to try to narrow certain requests and/or address Nexstar's objections.  But the parties made only limited progress.  Nexstar also declined to share proposed search terms and document custodians for collecting information potentially responsive to Comcast's requests (despite Comcast's proposal on multiple occasions that the parties exchange such standard information), which further hampered Comcast's discovery efforts.

Nexstar's recalcitrance forced Comcast to seek relief from the Court, which it did by way of a pre-motion conference letter on September 20, 2022.  (Dkt. Nos. 138-39).[1]  In particular, Comcast sought to compel Nexstar's compliance with the following requests (the "Requests"):

- Request Nos. 2 and 4 (seeking documents and communications sufficient to show Nexstar's involvement with WPIX and concerning Comcast's carriage of WPIX); and

---

[1] Comcast also filed a pre-motion conference letter concerning parallel discovery disputes with Mission.  (Dkt. Nos. 140-41.)  Although, as discussed further below, Magistrate Judge Aaron ultimately granted both applications, Mission has not filed any objections to the October 6 Order or any joinder in the Objections.

- Request Nos. 3, 7, and 15-21 (seeking information relevant to Nexstar's relationship with, and financial and operational control of, Mission and/or WPIX).

This Court referred Comcast's application (and the entire action for general pretrial supervision) to Magistrate Judge Aaron the following day.  (Dkt. No. 143.)  After further letter submissions, Magistrate Judge Aaron heard argument on October 6, 2022, and thereafter issued the October 6 Order granting Comcast's motion.  In reaching his determination, and as discussed further below, Magistrate Judge Aaron rejected Nexstar's argument that this Court's May 2 Order had somehow stricken one of Comcast's principal merits defenses, or otherwise precluded discovery into Nexstar's ownership and/or control of WPIX or Mission.  (Dkt. No. 155 ("Oct. 6 Tr.") at 8:18-9:7, 9:23-10:8, 22:17-23:12.)  Magistrate Judge Aaron further found that the Requests were "relevant to the claims in this case . . . including plaintiff's claim, Comcast's counterclaim, and the third-party claim," disagreeing with Nexstar's position that, for example, Nexstar's motive and opportunity to control Mission and WPIX had no bearing on its intent to procure the former's contractual breaches.  (*Id.* at 12:13-25, 14:16-25, 25:2-6; Dkt. No. 154 at ¶ 1.)  Finally, Magistrate Judge Aaron deemed it inappropriate to permit Nexstar and Mission to "cho[ose] which documents they're going to produce and which they're not going to produce" and, accordingly, ordered the parties to exchange proposed search terms, document custodians, and date ranges for collection (as Comcast had been proposing) and to meet and confer on any necessary "narrow[ing]" of individual Requests to address Nexstar's professed concerns about overbreadth.  (Oct. 6 Tr. at 14:16-25, 24:6-26:19; Dkt. No. 154 at ¶¶ 1-2.)

Comcast and Nexstar have since engaged in multiple meet-and-confer sessions regarding the Requests and are continuing to negotiate Nexstar's document collection parameters in good faith.  At the same time, Nexstar has not, as of this submission, produced any documents in response to the Requests.

7

**ARGUMENT**

Federal Rule of Civil Procedure 72(a) permits district courts to consider timely objections to magistrate judge orders on nondispositive matters such as discovery disputes and to "modify or set aside" any portions thereof that are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 336 F.R.D. 400, 403-04 (S.D.N.Y. 2020).[2]  "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if the district court is left with the definite and firm conviction that a mistake has been committed." *Id.* This standard is "highly deferential." *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511-12 (S.D.N.Y. 2013); *BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*, 19-cv-4273, 2022 WL 4181823, at *3 (S.D.N.Y. Sept. 13, 2022). Indeed, "magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Thai Lao*, 924 F. Supp. 2d at 511; *see also Williams v. Rosenblatt Secs., Inc.*, 263 F. Supp. 3d 802, 803-04 (S.D.N.Y. 2017) (Koeltl, J.) (order resolving ESI production issue "was well within the Magistrate Judge's broad discretion in resolving discovery disputes").

Accordingly, the "objector . . . carries a heavy burden" in challenging discovery rulings under Rule 72(a). *Khatabi v. Bonura*, 10-cv-1168, 2017 WL 10621191, at *3 (S.D.N.Y. Apr. 21, 2017); *Galloway v. County of Nassau*, 19-cv-5026, 2022 WL 681065, at *3 (E.D.N.Y. Mar. 7, 2022) (Rule 72(a) "imposes a heavy burden on the objecting party").  Neither the fact that the district "court would have decided the matter differently," *Rubin v. Valicenti Advisory Servs.,*

---

[2] Unless otherwise noted, all case citations herein omit any internal citations, quotation marks, emphases, and/or alterations.

*Inc.*, 471 F. Supp. 2d 329, 333 (S.D.N.Y. 2007), nor that "reasonable minds may differ on the wisdom of granting [a party's] motion" is "sufficient to overturn a magistrate judge's decision," *Edmonds v. Seavey*, 08-cv-5646, 2009 WL 2150971, at *2 (S.D.N.Y. Jul. 20, 2009).

## I.   MAGISTRATE JUDGE AARON'S RULING THAT THE REQUESTS ARE RELEVANT TO AT LEAST ONE OF COMCAST'S CONTRACT DEFENSES IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW

As Magistrate Judge Aaron rightly concluded, the Requests are relevant to Comcast's "*de facto* control*" defense against Nexstar's contract claim. (*See, e.g.*, Oct. 6 Tr. at 25:2-6.) Nexstar does not and could not dispute that those Requests bear directly on Comcast's argument that Nexstar exercises *de facto* control over WPIX in violation of applicable FCC station ownership restrictions. Rather, it contends that the Magistrate Judge erred in failing to recognize that this Court "has already considered and rejected" Comcast's "*de facto* control*" defense in the course of denying Comcast's initial motion to stay or dismiss. (Objections at 6-9.) Nexstar's position is inconsistent with the nature of Comcast's motion and the Court's express directives, and provides no basis to disturb the Magistrate Judge's careful and well-reasoned ruling.

Comcast's motion under the primary jurisdiction doctrine required this Court to make threshold determinations regarding, among other things, the likelihood of conflict or inconsistency between any eventual judicial and administrative decisions. The motion did not, however, address the merits of Comcast's contract defenses—including its argument that applicable "FCC[] Rules" preclude Nexstar from adding WPIX to the Comcast-Nexstar Agreement under the plain terms of that Agreement. As the Court acknowledged, it did not reach the merits of that issue, a determination that would be made at a future time in the case:

> Now, I don't decide anything, of course, until it's fully briefed, *and the meaning of that contractual provision will plainly be the subject of dispute between the parties, but if that contract provision is eventually found to mean that* – require a determination whether Nexstar is prohibited from negotiating for retransmission consent on

> behalf of such stations under FCC rules, one would wonder whether the correct interpretation of that contractual phrase is FCC negotiation rules as opposed to rules – any FCC rules, and one would question whether the ownership rules would be a fair reading of that provision.

(Dkt. No. 49 at 6:1-11 (emphasis added).)

Further belying any suggestion that the May 2 Order was intended to limit the parties' Rule 26 obligations going forward, the Court expressed that it was "certainly not on top of what the scope of discovery would be" given the action's pleading-stage posture.  (*Id.* at 25:2-18.)[3] Magistrate Judge Aaron thoroughly analyzed these very passages of the May 2 transcript in concluding that "Judge Koeltl made no ruling with respect to . . . the scope of discovery in this case" and declined to "decid[e] the contractual interpretation issue until it's fully briefed."  (*See, e.g.*, Oct. 6 Tr. at 8:18-9:7, 22:17-23:12 ("So it sounds to me like [Nexstar is] trying to have me shut down discovery on this interpretation point before it's decided.").)

Nexstar asks the Court to disregard the express parameters of its own May 2 Order, dismissing them as "colloquy with counsel" and "stray statement[s]."  (Objections at 8.)  As the Magistrate Judge correctly recognized, however, Nexstar's desire to "shut down discovery" is no basis to cast aside inconvenient aspects of the Court's prior Order as "surplusage" or "just talk[]."  (Oct. 6 Tr. at 9:5-7, 9:23-25.)

Simply put, the Court's May 2 Order denied a discretionary stay motion; it did not strike a defense or purport in any way to cabin the scope of forthcoming discovery.  Magistrate Judge Aaron therefore was correct in concluding that Nexstar cannot hide behind the Order to shirk its own discovery obligations.

---

[3] Moreover, Comcast's Counterclaim and TPC had not been filed at the time of the May 2 Order.  As a result, neither the parties nor the Court was in a position then to know what the full scope of discovery would be moving forward.

**II.**  **MAGISTRATE JUDGE AARON'S RULING THAT THE REQUESTS ARE RELEVANT TO COMCAST'S COUNTERCLAIM IS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW**

Even if the May 2 Order could somehow be construed as a merits ruling on one of Comcast's contract defenses (which it was not), it would still have no bearing on Comcast's Counterclaim—or the independent relevance of the Requests to that claim—as that pleading was still weeks away from submission.  (*See* Oct. 6 Tr. at 22:24-23:5 ("It's also important to note that at the time of the May 2 hearing before Judge Koeltl, Comcast's counterclaim and third-party claim had not yet been filed.  Thus, the scope of discovery [would have] been different on May 2 than it is today in any event.").)  Nexstar nevertheless argues that Magistrate Judge Aaron erred in concluding that the Requests are relevant to Comcast's tortious interference counterclaim (Oct. 6 Tr. at 25:2-6) because Nexstar's ownership and/or control of Mission and WPIX supposedly has no bearing on any element of the cause of action.  (Objections at 9-11.)  That view is mistaken.

As Nexstar recognizes (Objections at 10), to maintain a successful claim for tortious interference with contract under New York law, a party must plead and prove, among other things, both the defendant's "*intentional* interference" with the contract at issue and that such interference was "without reasonable justification."  *Int'l Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586, 595-96 (2d Cir. 1996) (emphasis added).  "[T]o determine whether interference with the contract was justified," New York courts balance a number of factors, including "the nature of the defendant's conduct" and the "*defendant's motive*."  *Id.* at 595-96 (emphasis added) *see also* Oct. 6. Tr. at 12:13-25 ("I assume that Nexstar isn't contending that if it somehow interfered with the [Comcast-Mission Agreement]" it could be "liable without" some "showing" of "mens rea or intent").

Nexstar suggests that discovery into its ownership and control of Mission and WPIX goes beyond the narrow permissible inquiry into "whether Nexstar specifically intended to induce Mission's alleged breach." (Objections at 10.) But that misses the point. It is precisely Nexstar's relationship to the entities at issue and its goal of consolidating *de facto* control of WPIX in violation of FCC station ownership restrictions that make it more probable that Nexstar (i) intended to interfere with the Comcast-Mission Agreement and (ii) had the ability and opportunity to do so successfully. That is particularly true given the admitted coordination between Nexstar and Mission that precipitated Mission's abrupt repudiation of its own addition of WPIX to the Comcast-Mission Agreement, ███████████████████████████. (*See, e.g.*, Counterclaim ¶¶ 33-47.) As Magistrate Judge Aaron recognized, in the absence of a "smoking pistol"—which, of course, discovery may well still yield—these are just the sorts of circumstances from which a factfinder could draw an "inference" of intentional and unjustified contractual interference. (Oct. 6 Tr. at 14:16-24 (also noting that in "discovery we don't shut these things down"; "it's an element of the claim, and they get to pursue discovery")); *see also S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery Inc.*, 751 F. App'x 39, 40-42 (2d Cir. 2018) (stating that the "intent" element of tortious inference with contract "is always a subjective matter of inference" and concluding that a reasonable jury could find "intent to induce [third party's breach]" based on "circumstantial evidence").

*Wellington Shields & Co. LLC v. Breakwater Inv. Mgmt. LLC*, 14-cv-7529, 2016 WL 5414979 (S.D.N.Y. Mar. 18, 2016), on which Nexstar relies, is not to the contrary. (Objections at 11.) To start with, *Wellington* is a summary judgment decision concerning, not discoverability, but rather the strength of the plaintiff's evidentiary showing *following* discovery. 2016 WL 541979, at *2, 5-7. Indeed, in granting summary judgment to defendant, the court repeatedly lamented the plaintiff's failure to further develop the factual record. *See, e.g., id.* at

12

*5. More importantly, the court's ruling on the merits reflects nothing more than the unremarkable proposition that, at the summary judgment stage, intentional procurement of a contractual breach generally cannot be inferred solely from the fact that the defendant "subsequently"—i.e., "well after the expiration" of the contract at issue—"gain[ed] additional control" over the breaching party's affiliate, in the absence of any concrete evidence of actual interference. *Id.* at *2, 5; *see also id.* at *5 ("Once again, there is no evidence in the record to suggest that Defendants intentionally interfered with Plaintiff's contract with Bleach."). That is far from the case here, where the record *already* reflects significant contemporaneous evidence of interference (as set out in the Counterclaim) and Comcast seeks to buttress it by adducing precisely *how* and *why* Nexstar pursued this course of action and was able to succeed. Nothing in *Wellington* suggests, let alone establishes, that such matters are not discoverable.

Additionally, Nexstar has not yet answered the Counterclaim or asserted its affirmative defenses, which too could raise factual or legal issues around Nexstar's intent and/or any purported justification for its conduct. For example, if Nexstar were to pursue an "economic interest defense," Comcast arguably would have to show in response that Nexstar acted improperly in interfering with the Comcast-Mission Agreement, including with the goal of circumventing applicable FCC ownership strictures. *Benihana of Tokyo, LLC v. Angelo, Gordon & Co.*, 259 F. Supp. 3d 16, 29-31 (S.D.N.Y. 2017), *aff'd* 712 F. App'x 85 (2d Cir. 2018); *Taboola, Inc. v. Ezoic Inc.*, 17-cv-9909, 2019 WL 465003, at *11-12 (S.D.N.Y. Feb. 6, 2019). Nexstar's protestation that it has not *yet* asserted any such defense (Objections at 11-12 n.2) highlights another reason why Magistrate Judge Aaron's order should be affirmed: the time for discovery in this action is now, and the Court should not permit Nexstar to hamstring Comcast by eventually pleading a defense on which it has resisted producing relevant materials.

13

### III.   NEXSTAR'S THREATENED STAY MOTION PROVIDES NO BASIS TO DISTURB THE OCTOBER 6 ORDER

Nexstar's statement that it intends to move for a stay of discovery (as to Nexstar) "to the extent the Court overrules [its] [O]bjections" provides no reason to modify or set aside the Magistrate Judge's October 6 Order.  (Objections at 12.)  For one thing, Nexstar has not made any such application to Magistrate Judge Aaron, to whom the Court referred this matter for general pretrial supervision.  Notably, after Nexstar indicated to Magistrate Judge Aaron that it might seek a stay of discovery, Magistrate Judge Aaron "signal[ed]" his disinclination to stay discovery at this juncture.  (*See* Oct. 6 Tr. at 21:4-13, 27:3-18.)  Regardless, it is well established that the mere pendency of Nexstar's motion to dismiss the Counterclaim is no basis to halt discovery—particularly when Nexstar waited *nearly three months* after filing its motion to even broach the topic of a stay.  *See, e.g.*, *Republic of Turkey v. Christie's Inc.*, 316 F. Supp. 3d 675, 677 (S.D.N.Y. 2018) ("discovery should not be routinely stayed simply on the basis that a motion to dismiss has been filed").  Nor has Nexstar even attempted to show that its motion is so unusually strong or compelling to warrant potential deviation from this rule.  To the contrary, as Magistrate Judge Aaron stated, based on his review, Comcast's affirmative claims present "a genuine issue here that is going to have to be resolved."  (Oct. 6 Tr. at 27:7-10.)

Finally, Nexstar's vague references to the supposedly "burdensome" nature of the Requests do not support a stay (or any other aspect of the Objections).  (*See, e.g.*, Objections at 2, 6, 12.)  Nexstar makes no attempt to substantiate any burdens it claims to face.  Nor did it do so before the Magistrate Judge until "estimat[ing]" during oral argument, without explanation or support, that the Requests would "require Nexstar to review over . . . 150,000 documents"—a statement neither the Magistrate Judge nor Comcast could evaluate given Nexstar's then-standing refusal to exchange document collection protocols.  (*See* Oct. 6 Tr. at 19-23; Dkt. No.

149 (failing to detail any claimed burden in written submission to Magistrate Judge).)  In any event, and as explained above, Magistrate Judge Aaron took care to "address proportionality concerns" in the October 6 Order, requiring the parties to meet and confer and effectuate any appropriate "narrow[ing]" of the Requests using "date range[s], custodian[s], and search terms." (Oct. 6 Tr. at 16:11-22, 24:6-25, 25:6-27:2 (also noting that those Requests using a "[documents] sufficient to show" formulation inherently do not "requir[e] review of tens of thousands of documents" and can be satisfied with a "limited" and curated production).)  Counsel for Nexstar has since participated in meet-and-confer sessions with counsel for Comcast, most recently proposing a collection protocol that apparently would require Nexstar to review no more than just over *4,000 total* documents (less than 1,000 unique hits) in response to the Requests.  While the parties are continuing to negotiate Nexstar's proposal, it is already clear that the scope of the contemplated review is well within the range of reasonableness for a complex commercial lawsuit between sophisticated parties, such as this one.

## **CONCLUSION**

For the reasons set forth above, the Objections should be overruled and the October 6 Order affirmed in its entirety.

Dated:   New York, New York
         October 28, 2022

Respectfully submitted,

DAVIS POLK & WARDWELL LLP


By:  */s/ Dana M. Seshens*
Dana M. Seshens
Craig J. Bergman
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
dana.seshens@davispolk.com
craig.bergman@davispolk.com

*Attorneys for Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Comcast Cable Communications, LLC*

16

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this memorandum of law complies with Rule II.D. of the Court's Individual Practices, because it contains 4,585 words exclusive of the sections exempted by Rule II.D. and is otherwise consistent with the formatting requirements set forth therein.

Dated:   New York, New York                    Respectfully Submitted,
         October 28, 2022

                                               DAVIS POLK & WARDWELL LLP

                                               By:   */s/ Dana M. Seshens*
                                                     Dana M. Seshens
                                                     Craig J. Bergman

                                                     *Attorneys for Defendant, Counterclaim
                                                     Plaintiff, and Third-Party Plaintiff
                                                     Comcast Cable Communications, LLC*